## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-81457-ROSENBERG

TARAH FLEISCHMAN, as Parent and Guardian
of C.F., a minor, and in his own right,

    Plaintiffs,

v.

FOREST TRAIL ACADEMY, LLC, et al.,

    Defendant.

_____/

### ORDER GRANTING DEFENDANT FOREST
### TRAIL'S MOTION TO DISMISS AND GRANTING IN PART
### AND DENYING IN PART DEFENDANT USYTA'S MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant Forest Trail Academy, LLC's ("Forest

Trail") Motion to Dismiss the Second Amended Complaint ("SAC") [DE 100] and Defendant

United Secure Youth Transport Agency, LLC's ("USYTA") Motion to Dismiss Plaintiffs' SAC

[DE 101].  The Court has reviewed the motions, Plaintiffs' oppositions, the various incorporated

pleadings, and the full record.  For the reasons discussed below, the Court **GRANTS** Forest Trail's

Motion to Dismiss and **GRANTS in part and DENIES in part** USYTA's Motion to Dismiss.

### I.   BACKGROUND

Plaintiffs in this case are Tarah Fleischman, as Parent and Guardian of C.F., a minor and

C.F. in his own right. DE 99, 1 n.1.  Twelve other cases with similar allegations were transferred

to the undersigned. *See* DE 67.  The Court ordered Plaintiffs to choose one of the cases to be the

lead case in order to more expeditiously adjudicate the Plaintiffs' cases. *Id.* at 3–4.  On March 31,

2025, Plaintiffs selected the action involving Ms. Fleischman and C.F. (24-cv-81457) as the lead

case. DE 70.  Many of the allegations involve multiple plaintiffs from the other twelve cases.

There is overlap between the claims in each of the cases due to the nature of the allegations. The "Plaintiffs" for the purposes of this Order are Ms. Fleischman and C.F. The Court will adjudicate this case individually and then, use an order to show cause process to adjudicate the remaining cases as described in the Court's prior order at DE 67. The facts as alleged in the SAC are as follows.

Plaintiffs instituted this action on November 21, 2024, alleging fourteen claims against various defendants, including (1) negligence, (2) vicarious liability, (3) civil conspiracy, (4) fraudulent concealment, (5) conspiracy to commit fraudulent concealment, (6) fraudulent misrepresentation, (7) conspiracy to commit fraudulent misrepresentation, and (8) violations of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), 18 U.S.C. 1589(a)–(b), and 18 U.S.C. § 2255. DE 99. The Defendants are the Atlantis Leadership Academy ("ALA"), ALA's owners (Randall and Lisa Cook), Forest Trail, and USYTA. *Id.* Debbie Celani and Teen Sentinel, LLC, are also Defendants who have settled their claims. DE 102, 2 n.1; DE 86.

The core of the allegations are "the inhumane, pervasive, and systematic abuse of minor children, including Plaintiff C.F." *Id.* at 1. More specifically, the allegations concern the abuse and neglect at a boarding school in Treasure Beach, Jamaica, run by ALA. The SAC alleges that the students were "physically abused, neglected, tortured, and trafficked" and required to complete manual labor while at the boarding school. DE 99 ¶¶ 3–4, 10. They students allegedly were also "water boarded, . . . punched, slapped, and beaten, depriv[ed] of food and water, isolated from their family, subjected to torment and psychological torture, and trafficked and subjected to forced manual labor and involuntary servitude." *Id.* ¶ 3. Plaintiff C.F. alleges that he endured many of those abuses and more, including being threatened by ALA staff with weapons, forced to exercise for hours on end without breaks, water, or food, stripped naked and hosed down, and required to

stay awake for days at a time. *Id.* ¶ 116.  Plaintiff C.F. suffers from Tourette's syndrome, autism, attention-deficit/hyperactivity disorder, and obsessive-compulsive disorder, and that other children at ALA also had special needs.  Plaintiff Fleischman alleges that she chose to send Plaintiff C.F. to ALA in Jamaica because it represented itself as a youth treatment center that would provide him educational and therapeutic services. *Id.* ¶¶ 5, 9, 14.  No such treatment was provided to C.F. or any other children. *Id.* ¶ 5.

Plaintiffs further allege that Forest Trail, a nationally and internationally accredited online school that provides online education services to students throughout the world, partnered with ALA.  According to the agreement between Forest Trail and ALA, Forest Trail "create[d] online education courses, deliver[ed] them over the internet through a software system/dashboard it owns, grade[d] student work and issue[d] report cards, issue[d] high school diplomas for students who graduate[d], and provide[d] online administrative technical support when IT issues ar[o]se." DE 100-1, 1.  Forest Trail was paid $150 per student, directly by ALA, for its services and did not receive payments from parents of the abused children. *Id.*  However, Plaintiffs allege that "Forest Trail, through its administration, management, and ownership, had a direct relationship to Randall Cook and was informed about the realities of ALA and the treatment of the children there." DE 99 ¶ 126.  This personal relationship with Randall Cook, according to Plaintiffs, is part of the reason that Forest Trail knew or should have known that the abuse was occurring. *Id.* ¶ 209.  Additionally, Plaintiffs allege that Forest Trail knew or should have known about the abuse because certain evidence such as attendance sheets, comments, help desk tickets, and the contract between with ALA reflect that Plaintiff C.F. "was not receiving the education that he required." DE 102, 5.

Plaintiffs also allege that Forest Trail had a duty, and breached that duty, to implement safety policies to protect the students, prevent ALA staff from abusing the children, report child

abuse, conduct background checks of its employees, adequately supervise its employees, and supervise or train ALA employees. DE 99 ¶ 140.  Additionally, Forest Trail should not have lied to or deceived authorities as to the care of the children and should not have misled parents or guardians to believe that ALA was a safe place to send their children. *Id.*

Plaintiffs further allege that USYTA partnered with ALA to transport children to the school in Jamaica. *Id.* ¶ 53.  Plaintiffs further allege that USYTA represented to parents and children, through its employees, that they had met Randall Cook in Jamaica and visited the premises of ALA on dozens of occasions. *Id.*  USYTA knew or should have known of the harms conducted at ALA because the "unsafe and inhumane conditions of ALA were conspicuous" such that it "would have been apparent to anyone visiting the premises." *Id.* ¶¶ 53–54.  Specifically, Plaintiff Fleischman alleges that USYTA represented to her "that ALA was a safe, secure, educational, accredited, therapeutic environment that would meet all of minor Plaintiff C.F.'s needs . . . that [he] would not be harmed while at ALA and . . . [they] were personally familiar with the program and its owners." *Id.* ¶ 108.  Then, in May 2023, USYTA transported Plaintiff C.F. from Wisconsin to Jamaica. *Id.* ¶ 114.  Plaintiff C.F.'s parents contracted with USYTA to do so. DE 101-1.

Plaintiff C.F. was enrolled at ALA since his arrival in May 2023 until February 2024, when the Jamaican Child Protection and Family Services Agency removed all of the enrolled children from the facility. DE 99 ¶ 114. These allegations form the basis for the eight counts (of the fourteen total) directed at Forest Trail and the nine counts directed at USYTA.

ALA, Randall Cook, and Lisa Cook failed to appear, answer, or otherwise plead in response to Plaintiff's initial complaint; the Clerk entered default against them on January 21, 2025. *See* DE 44.  On April 9, 2025, the Court, exercising its case management discretion, required Plaintiffs to file a motion for default judgment against the defaulted Defendants to (1) determine

if the defaulted Defendants are subject to personal jurisdiction in Florida, (2) ensure jurisdiction before the resolution of a lengthy, difficult, and complex case, and (3) streamline motion practice for the non-defaulted Defendants and preserve valuable resources for the parties and the Court. DE 75.   After Plaintiffs filed their motion for default judgment [DE 76], the Court denied the motion and granted Plaintiffs leave to amend the complaint. DE 77.   In that Order, the Court specifically directed Plaintiffs, for any future amended complaint, to "clearly explain what each Defendant is alleged to have known" regarding the abuse and alleged conspiracy. *See id.* at 7; *see also* DE 67, 6 ("[A]ny future amended complaints shall also **clearly** specify with precision **what** each Defendant is alleged to have **known** about the alleged abuse in this case." (emphasis in original)).   Plaintiffs filed their amended complaint [DE 80] on May 12, 2025, and Defendants filed motions to dismiss. Plaintiffs sought leave to file a Second Amended Complaint based on a Rule 11 Safe Harbor Motion for Sanctions from USYTA. DE 94.   Once the Court granted leave to do so, Plaintiffs filed the operative SAC [DE 99], which Defendants Forest Trail and USYTA each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   LEGAL STANDARD

Under applicable law, each of the claims asserted in Plaintiffs' SAC must meet the pleading standard established by Federal Rule of Civil Procedure 8(a)(2).   Additionally, because several of Plaintiffs' claims sound in fraud, the allegations as to those counts must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

### A.   Motion to Dismiss Under 12(b)(6) and the Plausibility Standard Under Rule 8(a)(2).

A court may grant a party's motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).   To adequately plead a claim for

relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation modified). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

The Eleventh Circuit has adopted a two-step framework to determine whether a complaint survives a motion to dismiss. *McCullough v. Finely*, 907 F.3d 1324, 1333 (11th Cir. 2008). First, a court "must identify the allegations that are 'no more than conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Second, "after disregarding conclusory allegations, [a court] assume[s] any

remaining factual allegations are true and determine[s] whether those factual allegations . . . 'give rise to an entitlement to relief'" in light of the applicable pleading standard. *McCullough*, 907 F.3d at 1333. (finding error where "the district court ignored the first step by accepting the complaint's conclusory allegations as true"). "Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim 'across the line from conceivable to plausible.'" *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1186 (S.D. Fla. 2013) (quoting *Iqbal*, 556 U.S. at 680).

**B.    Particularity Standard Under Rule 9(b).**

In addition to satisfying the pleading requirements of Rule 8(a)(2), a claim sounding in fraud must be stated with sufficient particularity to satisfy the heightened pleading standard of Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake). It is well settled, however, that Rule 9(b), "which requires that allegations of fraud be stated with particularity, must be harmonized with Rule 8(a), which requires only a short and plain statement of the claim. The Eleventh Circuit has held that 'Rule 9(b) must not be read to abrogate Rule 8.'" *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 878 (S.D. Fla. 1997) (quoting *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985)).

"Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (citation modified); *see also Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious

charges of immoral and fraudulent behavior." (citation modified)).   Accordingly, Rule 9(b) requires that pleadings include specific "facts as to time, place, and substance" and "allege the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567–69 (11th Cir. 1994).   In other words:

> Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks*, 116 F.3d at 1371; *Cooper*, 19 F.3d at 567 ("This requirement . . . guards against 'guilt by association.'").

"These factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements through alternative means." *SIG*, 971 F. Supp. 2d at 1186.  "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *Alhassid v. Bank of Am., N.A.*, No. 14-CV-20484, 2014 WL 6480656, at * 11 (S.D. Fla. Nov. 17, 2014) (quoting *U.S. ex rel Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007)) (citation modified).

Notably, Rule 9(b) exempts pleadings of knowledge from a particularity requirement; they may instead by alleged generally.  But the Supreme Court has made clear that plaintiffs, when pleading knowledge, must still meet the Rule 8 pleading standard of plausibility. *Iqbal*, 556 U.S. at 687.

### III. DISCUSSION

Forest Trail and USYTA have filed separate motions to dismiss.  For the reasons set forth more fully below, the Court concludes that Plaintiffs have failed to state a claim for relief against Forest Trail because they have not established that Forest Trail knew or should have known about the abuse at ALA. On the other hand, the Court finds that Plaintiffs have plausibly alleged that USYTA had knowledge of the abuse; accordingly, four of the nine claims against USTYA survives the motion to dismiss.

**A. Forest Trail's Motion to Dismiss for Failure to State a Claim.**

Plaintiffs allege eight claims against Forest Trail: negligence, civil conspiracy, fraudulent concealment, conspiracy to commit fraudulent concealment, fraudulent misrepresentation, conspiracy to commit fraudulent misrepresentation, conduct in violation of the TVPRA under 18 U.S.C. § 1589(b), and conduct in violation of the TVPRA under 18 U.S.C. § 2255.  Many of these claims rely on the contention that Forest Trail knew or should have known about the abuse at ALA. The Court first analyzes whether Plaintiffs have alleged sufficient facts to establish that Forest Trail knew or should have known about ALA's abuses and then analyzes the counts against Forest Trail.

**1.    Whether Plaintiffs sufficiently allege that Forest Trail knew or should have known about the abuses at ALA.**

Forest Trail argues that Plaintiffs have not adequately pled that Forest Trail had knowledge of the alleged abuse in this case.  In response, Plaintiffs argue that various allegations in the Second Amended Complaint establish knowledge.  The Court addresses each of the allegations in turn.

<u>Forest Trail's Grading of Tests and Homework</u>

Plaintiffs allege that Forest Trail "would read, review, and grade tests and other homework assignments from students and thus, knew, or should have known, that educational neglect was

9

occurring because the assignments were not timely and/or not correct and/or showed signs of abuse and neglect." DE 99 ¶ 40.  Plaintiffs argue that this allegation establishes that Forest Trail had knowledge of abuse.  Plaintiffs' argument is not persuasive.

Plaintiffs do not explain how the students' coursework or submissions would have indicated to a Forest Trail instructor that the child was suffering from neglect or abuse.  Tardy assignments and incorrect answers alone are not sufficient to push a claim "across the line from conceivable to plausible."[1] *Iqbal*, 556 U.S. at 680.  That is especially the case here: when Forest Trail did check in on C.F.'s tardy assignments, an ALA employee stated that "he is working [o]n other courses right now." DE 99-12.  This response does not plausibly lead to a conclusion that Forest Trail should have known that Plaintiff C.F. was being abused, as opposed to busy with other work.  Plaintiffs do not allege that the graders at Forest Trail engaged directly with the students.  Instead, they state that Forest Trail provided "pre-recorded classes" to ALA students. DE 99 ¶ 42; *see also* DE 100, 2 (Forest Trail did not provide lessons through Zoom or otherwise see students at Atlantis in a "one-on-one" setting. Rather, it provided software and pre-recorded school lessons to Atlantis, graded student submissions, issued diplomas, and was paid by Atlantis for its services.").  Poor work product does not plausibly suggest that a student was being abused or neglected, particularly when the (remote) instructors never observed the students' conduct.  Thus, Plaintiffs' allegation is more conclusory than factual and does not need to be assumed true for the purposes of Forest Trail's motion to dismiss. *Chaparro*, 693 F.3d at 1337.

---

[1] Plaintiffs allege that Plaintiff C.F. was absent for nearly five months and that such a large scale of absence and missing assignments should have apprised Forest Trail of the neglect and abuse at ALA.  However, for the reasons discussed below, the Court finds Plaintiffs' argument unpersuasive because Plaintiffs also allege the absences occurred after ALA was closed—there were no classes for C.F. to attend during that period of time.

<u>Forest Trail's Observance of Student Attendance</u>

Plaintiffs allege that Forest Trail received attendance sheets, and that the sheets are indicative of absences. DE 99 ¶ 41.  Plaintiffs further argue that the absences put Forest Trail on notice of abuse and neglect.  Plaintiffs' argument is not persuasive.

Plaintiffs' argument is based upon the contention that C.F did not attend a single class between September 2024 and January 2025 and, according to Plaintiffs, this should have notified Forest Trail that Plaintiff C.F. was suffering and might have been abused during that time. *Id.* ¶ 41; DE 99-10.  But Plaintiff C.F. was enrolled at ALA between May 2023 and February 2024, until ALA was shut down by the Jamaican authorities in February 2024. DE 99 ¶¶ 114, 205.  It was impossible for him, or any other student, to attend ALA classes starting in September 2024 because the academy was closed.  This means that Plaintiff C.F.'s alleged absences in late 2024 cannot support a plausible allegation that Forest Trail should have known of the abuse at ALA.

<u>Forest Trail's Communication with Parents</u>

Plaintiffs also rely upon the allegation that Forest Trail communicated with the students' parents and Lisa Cook about the students, and that those communications show that Forest Trail had knowledge of abuse.  More specifically, Plaintiffs rely upon the following comment on Plaintiff C.F.'s records:

| 10/12/2023 1:26:00 PM | attendance follow up | talked to C█████'s parent. said that he's doing fine. said that they will check in him and have him send an update to Ms. Splinter. | Maureen Luchavez |
| --- | --- | --- | --- |

DE 99-11.  Plaintiffs argue that this record demonstrates that Forest Trail lied to Plaintiff C.F.'s parents about his well-being. DE 99 ¶ 42.  But even viewing the allegation in the light most favorable to Plaintiffs, the record of the conversation does not suggest that Forest Trail knew of the abuse.  Plaintiffs' argument *assumes* that Forest Trail knew Plaintiff C.F. was being abused

11

when Forest Trail communicated to Plaintiff Fleischman that he was okay.  Because Plaintiffs do

not explain their assumption—how Forest Trail knew or should have known that C.F. was being

abused—this allegation in the SAC does not plausibly suggest that Forest Trail had knowledge of

abuse.

Forest Trail's Relationship with the Students

Plaintiffs allege that Forest Trail was "acting *in loco parentis* for the minor children at

ALA, and thus, [was] responsible for the care, custody, control, and guardianship over the children

including their safety and well-being." *Id.* ¶ 135.  Plaintiffs argue that this allegation establishes

that Forest Trail had knowledge of abuse, but the allegation does not allege a fact.  It asserts a legal

conclusion.

Plaintiffs do not point to factual allegations in support of their legal assertion.  Instead, they

merely repeat their legal assertion five times in the SAC. *Id.* ¶¶ 103, 135, 147, 157, 168.  Plaintiffs

do not allege or explain how Forest Trail, from Florida, established "custody, control, and

guardianship" over any of the students based in Jamaica.  They have not even alleged that Forest

Trail had direct communication with the students (let alone custody or control) and have instead

specifically alleged that Randall Cook was at all material times the children's guardian.

If Plaintiffs contend that Forest Trail's contract with ALA created an *in loco parentis* duty,

the Court disagrees.  The agreement lists Forest Trail's specific obligations that relate to students,

including only the responsibilities to "[p]rovide telephone and online technical support to ALA

faculty, students, and staff who need course use and administrative technical support" and to

"[r]emain the contact for course materials for students, parents, and faculty." DE 100-1, 5.  In sum,

Plaintiff's assertion of a legal conclusion does not plausibly suggest that Forest Trail had

knowledge of abuse at ALA.

12

<u>Forest Trail's Relationship with Randall Cook</u>

Plaintiffs make another set of allegations to establish that Forest Trail knew or should have known about the abuse at ALA.  Plaintiffs allege that Forest Trail had a nine-year relationship with Randall Cook and that, as a result of that nine-year relationship, "Forest Trail would then look the other way when virtually none of the children it was contracted to provide educational services to, including minor Plaintiff C.F.," were actually benefiting from the purported services. DE 99 ¶ 209. Plaintiffs further allege that Forest Trail was paid to conceal "the truth about ALA and how children, including minor Plaintiff C.F., were being abused, exploited, trafficked, and used to turn a financial profit." *Id.*  These allegations stop short of clearly alleging that Randall Cook informed Forest Trail of abuse at ALA, and instead rely upon an inference utilizing the following logical chain: (i) because Randall Cook had a nine-year business relationship with Forest Trail and (ii) because Randall Cook paid Forest Trail for Forest Trail's services, (iii) that means Forest Trail had knowledge of abuses at ALA.

The Court is not prepared to infer knowledge of abuse from the length of Randal Cook's relationship with Forest Trail or from Forest Trail's provision of services for two reasons.  First, there are no supporting allegations that explain or describe the nature of Randall Cook's relationship with Forest Trail; there are no allegations that plausibly lead to the inference that the nature of the parties' relationship was such that Randall Cook would inform Forest Trail that he was operating a criminal enterprise where he abused children for profit.  Second, as discussed in the next section Plaintiffs stop short of alleging something other than business-as-usual between Randall Cook and Forest Trail.

<u>The Allegation that Randall Cook Informed Forest Trail of "Realities"</u>

The closest Plaintiffs come to a factual allegation about Forest Trail's knowledge is when they state: "Forest Trail, through its administration, management, and ownership, had a direct relationship to Randall Cook and *was informed about the realities* of ALA and the treatment of the children there." *Id.* ¶ 126 (emphasis added).  One problem with this allegation is that it is vague, particularly when the Court juxtaposes the ambiguity of the word "realities" with Plaintiffs' hyper-specific allegations of abuse.  In other words, Plaintiffs are prepared to plead with great specificity the various abuses that C.F. endured, but they have elected *not* to plead with specificity that Randall Cook informed Forest Trail that he waterboarded, beat, starved, and tortured children. Instead, Plaintiffs allege that Randall Cook informed Forest Trail of certain "realities" about how the children were treated.  It is conceivable that the word "realities" includes Randall Cook's abuse of children, but it is also conceivable that the word references any other facet of running a school. The Court is not prepared to infer that the word "realities" includes abuse, but the Court's dismissal is with leave to amend, and Plaintiffs may therefore seek leave to clearly allege that Randall Cook informed Forest Trail of abuse at ALA.

A second problem with the allegation is its lack of support.  No other factual allegations explain what kind of relationship Randall Cook had with Forest Trail such that he would share, with an online and internationally recognized education provider, that he was abusing children for profit and wanted Forest Trail to join in a conspiracy to further that abuse.  There are no factual allegations that Forest Trail did anything other than business as usual (marketing, accreditation, and educational services)[2]  such that the Court could infer that Forest Trail was told of the abuse.

---

[2] By lumping all of the Defendants together in the SAC, Plaintiffs' allegation of kickbacks is conclusory. *See* DE 99 ¶ 236 ("All Defendants worked together and received financial gain through compensation, bonuses, kickbacks . . . .").

Without allegations to this effect, the Court could reasonably infer that ALA was just one of Forest Trail's many clients for which it provided its standard services.  In other words, although this allegation in the SAC means that Forest Trail's knowledge of abuse was conceivable or possible, it does not (nor do all the allegations as a whole) suggest that Forest Trail's knowledge was plausible as required by Rule 8.

<u>Conclusion</u>

Having identified and disregarded Plaintiffs' conclusory allegations, and assuming the remaining factual allegations to be true, the Court cannot find that the SAC adequately pleads facts that plausibly suggest that Forest Trail knew or should have known about the abuse at ALA.  With this conclusion in hand, the Court turns to each claim against Forest Trail.

**2.    Count I: Negligence.**

Count I alleges that Forest Trail "owed a duty to exercise reasonable care to ensure the safety and protect the health and welfare of minor Plaintiff C.F. and provide a safe educational environment through its partnership with ALA." DE 99 ¶ 134.  According to Plaintiffs, this duty arose because Forest Trail was (1) acting *in loco parentis* for the minor children in its "care, custody, control and guardianship"; (2) required to supervise the students according to Fla. Stat. § 381.0056; and (3) in contract with ALA to provide additional duties. *Id.* ¶¶ 135–37.

In Florida, to prevail on a theory of negligence against a school, a plaintiff must establish the basic elements of negligence: "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate

---

If Plaintiffs elect to plead that Forest Trail received payments not for services rendered (such as a fee in excess of their normal fee), but instead as a kickback for its participation in a criminal enterprise, Plaintiffs should clearly do so without comingling all of the Defendants' conduct in the same allegation.  Notably, although it is outside the four corners of Plaintiffs' SAC (and the Court does not rely upon it), Forest Trail represents to the Court that the payments it is alleged to have received from Randall Cook in this case are the same fees they charge every client around the world. *See* DE 100.

cause of plaintiff's injury." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. Dist. Ct. App. 1985)).

But even assuming a duty existed,[3] Plaintiffs have not alleged facts that Forest Trail breached that duty because the allegations do not support that Forest Trail should have known of the abuses at ALA. *See Env't Health Testing, LLC v. Lake Cnty. Sch. Bd.*, No. 11-CV-121, 2011 WL 13295825, at \*9 (M.D. Fla. Sept. 28, 2011) (requiring factual allegations that the school board became aware or should have become aware of the plaintiff's alleged conduct).  Forest Trail could not have acted negligently in failing to stop or report the harm it could not have known existed. Plaintiffs also have not alleged that Forest Trail's employees or agents harmed students.  Plaintiffs only assert allegations of trafficking and transporting of children against co-Defendant USYTA, not Forest Trail.

Thus, the Court finds that Plaintiffs have failed to state a negligence claim upon which relief can be granted and Count I against Forest Trail is dismissed.

### 3.    Count VII: Civil Conspiracy.

Count VII alleges that all Defendants, including Forest Trail, "formed an association to carry out a single business enterprise, for profit, to combine their property, money, efforts, skill, employees, resources, and knowledge." DE 99 ¶ 203.  The purpose of this enterprise, according to Plaintiffs, was to "conceal child abuse, neglect, mistreatment, and torture of children; [and] act in concert with one another to promote and market to members of the general public, and educational

---

[3] The Court also notes that Plaintiffs have not sufficiently pled that a duty exists because they have not pled (1)  how Forest Trail exercised custody or control from Florida over students in Jamaica; (2) that Forest Trail is a public entity subject to a duty under Fla. Stat. § 381.0056; and (3) that the contract with ALA created duties beyond providing technical support to students.

and child welfare regulatory authorities, the success of ALA's methods for the purpose of enhancing enrollment and revenue." *Id.* ¶ 205.  The allegations underlying the civil conspiracy include "fraudulent representations, omissions and/or concealment of facts." *Id.* ¶ 210.

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir.2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. Dist. Ct. App. 2008)) (citation modified); *see also Martinez*, 480 F.3d at 1067–68 (explaining that "where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity" in accordance with Rule 9(b)).

A civil conspiracy claim requires that the plaintiff allege sufficient facts as to knowledge of the underlying unlawful act. *See Martinez*, 480 F.3d at 1067–68 (affirming dismissal of a civil conspiracy claim where "[plaintiffs] did not explain how [defendants] knew that the policies had been procured by fraud").  For the reasons set forth above, Plaintiffs have not sufficiently pled that Forest Trail should have known about the abuse at ALA.  Thus, Plaintiffs have failed to state a claim for civil conspiracy against Forest Trail upon which relief can be granted.  Forest Trail's motion is granted as to this claim; Count VII against Forest Trail is dismissed.

### 4.  Counts VIII, IX, X, and XI: Fraudulent Concealment, Fraudulent Misrepresentation, and Conspiracy to Commit Fraudulent Concealment and Fraudulent Misrepresentation.

Count VIII alleges that Forest Trail, through its accreditation services, helped to conceal the truth about ALA to parents.  DE 99 ¶¶ 225–45.  Count X alleges that based on the same conduct, all Defendants, including Forest Trail, fraudulently misrepresented that ALA was a safe

educational institution for parents to send their kids. *Id.* ¶¶ 261–86.  Counts IX and XI allege conspiracy between all Defendants to do the same. *Id.* ¶¶ 246–60, 287–302.

Under Florida law, "a claim for fraudulent concealment is the same as for fraudulent misrepresentation." *XP Global, Inc. v. AVM, L.P.*, No. 16-CV-80905, 2018 WL 10150927, at *17 (S.D. Fla. Jan. 11, 2018).  Both claims require a plaintiff to show "(1) a false statement of material fact; (2) the [defendant] knew or should have known of the falsity of the statement; (3) the [defendant] intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 n.13 (11th Cir. 2009) (citing *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004)).

The Court's determination that Plaintiffs failed to sufficiently allege that Forest Trail should have known of the abuse means that Plaintiffs fail to establish the second element of fraudulent concealment or misrepresentation.  Even under a more relaxed pleading standard, the analysis remains the same because Plaintiffs have not established knowledge. *U.S. ex. Rel. Butler v. Magellan Health Servs., Inc.*, 101 F. Supp. 2d 1365, 1368–69 (M.D. Fla. 2000) (allowing for a relaxed pleading standard where evidence of fraud lies in the defendant's control).  The same is true for the conspiracy claims, which require Plaintiffs to allege the elements of a civil conspiracy along with the elements of fraudulent concealment and fraudulent misrepresentation. *See In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 346 (Bankr. S.D. Fla. 2013).  Accordingly, the Court grants Forest Trail's motion as to these claims; Counts VIII, IX, X, and XI against Forest Trail are dismissed.

5.      **Counts XIII and XIV: Conduct in Violation of the TVPRA, 18 U.S.C.
§§ 1589(b), 2255.**

Count XIII alleges beneficiary liability under the TVPRA against Forest Trail.[4]  The

TVPRA prohibits providing or obtaining labor or services of a person by coercion or force. 18

U.S.C. § 1589.  The TVPRA also prohibits being a beneficiary of forced labor. *Id.* § 1589(b).  The

TVPRA is codified as a criminal prohibition, but there is a private right of action for claims under

18 U.S.C. § 1589(b). *See* 18 U.S.C. § 1595; *see also Roman v. Tyco Simplex Grinnell*, No. 16–

CV–3449, 2017 WL 2427251, at * 5 (M.D. Fla. June 5, 2017).    Count XIV also alleges, under

18 U.S.C. § 2255, that Forest Trail benefitted from forced labor.

To state a beneficiary claim under § 1595(b), a plaintiff must "plausibly allege that the

defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise

involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the

plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or

enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roofs Inns, Inc.*, 21 F.4th 714,

726 (11th Cir. 2021).    To establish the fourth requirement, Plaintiffs must plead facts that

demonstrate Forest Trail either (a) had knowledge—"an awareness or understanding of a fact or

circumstance"—or (b) constructive knowledge—"knowledge which one using reasonable care or

diligence should have." *Id.* at 725.

As discussed above, Plaintiffs have not alleged sufficient facts that Forest Trail knew or

should have known of the abuses—including forced labor—at ALA.  Plaintiffs' allegations mostly

restate the elements of a claim under 18 U.S.C. § 1589(b) and do not allege facts to support the

allegations. *See, e.g.*, DE 99 ¶ 326 ("Defendants' knowingly benefited from, and received value

---

[4] Plaintiffs allege perpetrator liability under 18 U.S.C. § 1589(a) against ALA, Randall Cook, and Lisa Cook, but only
allege beneficiary liability under § 1589(b) against Forest Trail and USYTA.

for, their participation in their venture with each of the other Defendants, with knowledge, or in reckless disregard of the fact, Defendants utilized Atlantis Leadership Academy and its brand, to solicit and coerce Plaintiff into forced labor and involuntary servitude."). Plaintiffs do include an allegation that "Defendants' were each paid a financial benefit or received a financial gain by way of a kick back or bonus as a result of their participation in this venture." *Id.* ¶ 328. But this allegation is conclusory because it assumes that Forest Trail had reason to know of the abuses at ALA and is therefore not entitled to a presumption of truth. *Chaparro*, 693 F.3d at 1337.

Without pleading adequate facts as to the fourth requirement of this claim, Plaintiffs have failed to state a claim upon which relief can be granted as to Counts XIII and XIV. Thus, the motion to dismiss Counts XIII and XIV as to Forest Trail is granted, and those counts are dismissed.

## B. USYTA's Motion to Dismiss for Failure to State a Claim.[5]

Plaintiffs allege the same eight claims against USYTA and an additional claim for vicarious liability. The Court will analyze whether the SAC sufficiency alleges whether USYTA should have known about ALA's abuses, and then addresses each claim.

### 1. Whether Plaintiffs sufficiently allege that USYTA knew or should have known about the abuses at ALA.

Plaintiffs' allegations as to whether USYTA knew or should have known of the abuse primarily are based on assurances by USYTA employees to parents and students, including Plaintiff Fleischman. Specifically, Plaintiffs allege:

Since approximately 2015 through 2024, USYTA partnered with the Atlantis Defendants to transport children to ALA. USYTA represented to its clients,

---

[5] Both Plaintiffs and USYTA make arguments based on Florida law. Neither party addressed whether it was the correct choice of law. To that end, the Court assumes without deciding that either: (i) Florida law applies to USYTA and these claims or (ii) the law that does apply does not differ from Florida law.

> including Plaintiffs, through its employees, agents, and/or contracted transporters, that they met with Randall Cook in Jamaica and visited the premises of ALA on dozens of occasions. The aforementioned unsafe and inhumane conditions of ALA were conspicuous and out in the open and would have been apparent to anyone visiting the premises.

DE 99 ¶ 53. They also allege:

> Defendants USYTA and Celani represented to Plaintiff Tarah Fleischman that ALA was a safe, secure, educational, accredited, therapeutic environment that would meet all of minor Plaintiff C.F.'s needs. These Defendants warranted to Plaintiff Tarah Fleischman that minor C.F. would not be harmed while at ALA and further represented that it was not only familiar with ALA but had helped to place other children at ALA in the past and were personally familiar with the program and its owners, Randall and Lisa Cook.

*Id.* ¶ 108. Plaintiffs provided affidavits to support their assertion from three other plaintiffs in the related actions, including two parents and an ALA student. DE 99-14; DE 99-15; DE 99-16. Each affidavit avers that USYTA employees assured the plaintiffs that they had been to ALA, had met Randall Cook, and believed ALA was safe for children. Plaintiffs specifically allege that "USYTA represented to its clients, *including Plaintiffs*," that ALA was a safe place and *would meet Plaintiff C.F.'s needs*. DE 99 ¶¶ 53, 108 (emphasis added).

USYTA argues that Plaintiffs' allegations—that the "unsafe and inhumane conditions of ALA were conspicuous and out in the open and would have been apparent to anyone visiting the premises"—are conclusory. *Id.* ¶ 53. The Court disagrees.

Plaintiffs allege that the abuse was conspicuous and out in the open. The conditions include students "being water boarded, tortured, physically assaulted, punched, slapped, and beaten, depriv[ed] of food and water, isolated from their family, subjected to torment and psychological torture, and trafficked and subjected to forced manual labor and involuntary servitude." *Id.* ¶ 3. The SAC also alleges that Plaintiff C.F. was forced to "clean[] the ALA facility; do[] landscaping

work at ALA, the local beach, the local sports park, and local rental properties; and clean[] the vehicles of ALA staff members." *Id.* ¶ 116.

These factual allegations stand in contrast with the conclusory allegations against Forest Trail; they allege specific conduct and knowledge that would have apprised USYTA and its employees of the abuse at ALA.  Plaintiffs have sufficiently alleged facts that USYTA's purported knowledge from the conceivable to the plausible. *See* Fed. R. Civ. P. 9(b) (exempting pleadings of knowledge from a particularity requirement and allowing them to be alleged generally).  With this determination, the Court turns to each claim against USYTA.

### 2.   Counts III and VI: Negligence and Vicarious Liability

To prevail on a theory of negligence, a plaintiff must establish "that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Grant v. City of West Palm Beach*, No. 25-CV-80035, 2025 WL 1168914, at *6 (S.D. Fla. Apr. 22, 2025).  In Florida, when a "defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon the defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)) (citation modified). To hold an employer vicariously liable, a plaintiff must allege that the conduct occurred within the scope of employment. *Cf. Harrison v. Red Bull Distrib. Co., Inc.,* No. 19-CV-17, 2019 WL 1117022, at *2 (M.D. Fla. Mar. 11, 2019).  "An employee's conduct is within the scope of his employment when it '(1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master.'" *Id.* (citing *Goss v. Human Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. Dist. Ct. App. 2012)).

The Court has determined, based on Plaintiffs' allegations, that it is plausible that USYTA should have known about the abuse. The Court therefore finds that Plaintiffs can proceed on a negligence claim. Plaintiffs allege that USYTA transported Plaintiff C.F. to Jamaica to attend ALA, which USYTA knew or should have known would result in his abuse and neglect. Plaintiffs, therefore, sufficiently allege that USYTA's conduct created a foreseeable zone of risk that Plaintiff C.F. also would be abused or neglected. Based on the allegations, USYTA owed Plaintiffs a duty under Florida law. That duty required USYTA to lessen the risk or ensure sufficient precautions to protect Plaintiff C.F. from the potential harm. By transporting Plaintiff C.F. to ALA, USYTA would have breached its duty as a proximate cause of Plaintiff C.F.'s injury and damages.

Plaintiffs' vicarious liability claim also survives. Plaintiffs allege that the breach of duty occurred when USYTA's employees were transporting Plaintiff C.F. to ALA in Jamaica. This falls within the scope of their employment: (1) USYTA's employees were hired to transport youth, and Plaintiff C.F. in particular, to ALA; (2) the employees assured Plaintiffs of the safety of ALA and while transporting the youth to ALA, and (3) and the employees' actions were, at least in part, motivated by the need to complete the contract on behalf of USYTA.

Plaintiffs have stated a claim for relief for negligence and vicarious liability in Counts III and VI. USYTA's motion to dismiss these counts is denied.

### 3.    Count VII: Civil Conspiracy.

The allegations in Count VII are nearly identical to those made against Forest Trail. Plaintiffs have not sufficiently pled a claim for civil conspiracy based on the elements stated above in Section III.A.3. The Court determined that USYTA knew or should have known about the abuse and neglect based on a plausibility standard. But the other requirements for civil conspiracy must be pled with Rule 9(b) specificity because the underlying acts are premised on fraud.

It is not sufficient to simply allege that the USYTA and ALA entered into an agreement to transport Plaintiff C.F. to ALA.  Plaintiff must allege *facts*, with particularity, about the purported agreement between USYTA and ALA.  It is plausible that USYTA only transported the children to ALA in its normal course of business and not in furtherance of illegally trafficking children to exploit them for their labor—even if USYTA knew or should have known of the abuses at ALA.  Therefore, because Rule 9(b) also guards against "guilt by association," Plaintiffs must allege more specific facts in support of its claim. *See Cooper*, 19 F.3d at 566–67.  Thus, USYTA's motion to dismiss is granted as to Count VII.

### 4. Counts VIII, IX, X, and XI: Fraudulent Concealment, Fraudulent Misrepresentation, and Conspiracy to Commit Fraudulent Concealment and Fraudulent Misrepresentation.

Count VIII alleges that all Defendants "have carried out, and continue to carry out, a campaign to deceive the public, Plaintiff Fleischman, and other parents and legal guardians as to the alleged safety and security of ALA." DE 99 ¶ 225.  The Defendants allegedly concealed the abuse, neglect, and torture to entice parents to send their children to ALA and profited from this concealment. *See id.* ¶¶ 226, 233, 236.  Plaintiffs allege that USYTA represented that it met with Randall Cook, visited the premises, and that the children would be properly cared for. *Id.* ¶¶ 230, 235.  Plaintiffs allege that USYTA's assurances concealed the truth about ALA and enticed parents to send their children to ALA.  Count IX alleges conspiracy between all Defendants to do the same. *Id.* ¶¶ 246–60.  Similarly, Count X alleges that, based on the same conduct, all Defendants fraudulently misrepresented that ALA was a safe educational institution for parents to send their children. *Id.* ¶¶ 261–86.  Count XI alleges conspiracy between all Defendants to fraudulently misrepresent the same information. *Id.* ¶¶ 287–302.

Plaintiff has alleged sufficient facts to survive USYTA's motion to dismiss on these counts based on the elements described above in Section III.A.4.  First, the fact that ALA was a safe place for students is a false statement if the allegations regarding the torture and abuse are true.  Moreover, the statement was material.  Plaintiff Fleischman alleged that she "both believe[d] in and rel[ied] upon such statements" regarding ALA because they "permeate[d] confidence and assurance that ALA was a safe place to send [her] child." DE 99 ¶ 272; *id.* ¶ 268 ("This concealment concerned material information to Plaintiffs' decision to enroll minor C.F. at ALA.").  Second, the SAC allegations plausibly show that USYTA should have known of the falsity of the statement.  Third, Plaintiffs allege that USYTA made the assertions to induce reliance and receive the profits from transporting Plaintiff C.F. to ALA. *See id.* ¶ 273.  Fourth, Plaintiffs justifiably relied on the assurances because they were made with personal knowledge of Randall Cook and ALA by people who had visited the campus dozens of times.

USYTA argues that even assuming the alleged statements were made, they are protected by the First Amendment to the Constitution because opinions are not actionable for fraud. DE 101, 13 (citing *Glass v. Craig*, 91 So. 332, 335 (Fla. 1922) ("[A] mere statement of opinion, belief, or expectation, although untrue and resting upon no information, is not such a false representation as to constitute fraud.")).  The only allegation that "is not an opinion" according to USYTA was that it "had helped to place children at ALA in the past." DE 101, 14.  The Court disagrees.  Statements that ALA was "a safe, . . . therapeutic environment that would meet all of minor Plaintiff C.F.'s needs . . . [who] would not be harmed while at ALA" could not be an opinion in light of what USYTA is alleged to have known. DE 99 ¶ 108.  It could not be opined that a school is "safe" or "therapeutic" when the school allegedly water boarded, starved, stripped down and hosed, threatened with weapons, and battered children.  Nor could it be opined that such a school would

take care of Plaintiff C.F.'s Tourette's syndrome, autism, ADHD, and OCD.  These are not matters of opinion, as USYTA suggests, like "where one parent may have the opinion it is safe for her child to ride a bicycle with a helmet and sneakers, another parent might disagree and have the opinion that it is perfectly okay for their child to ride in sandals with no helmet." DE 101, 11.

Accordingly, the Court finds that Plaintiffs' factual allegations in support of Counts VIII and X are sufficient to survive USYTA's motion to dismiss those counts.  To survive on Counts IX and XI, however, Plaintiffs are required to allege the civil conspiracy elements.  *See In re Palm Beach Fin. Partners, L.P.*, 517 B.R. at 346.  As explained above, Plaintiffs have not done so; thus, for the same reasons the Court dismissed Count VII, the Court grants USYTA's motion to dismiss as to Counts IX and XI.

### 5.    Counts XIII and XIV: Conduct in Violation of the TVPRA, 18 U.S.C. §§ 1589(b), 2255.

Count XIII alleges beneficiary liability under the TVPRA against USYTA in the same way it does against Forest Trail.  Count XIV also alleges that USYTA benefitted from forced labor but under 18 U.S.C. § 2255.  Plaintiffs' allegations must plausibly allege the same elements stated in Section III.A.5. But Plaintiffs' allegations as to these counts merely restate the elements of the claim.  And the additional allegation that USYTA received a "kick back" is, as decided earlier, more conclusory than factual. DE 99 ¶ 328.  It is therefore not entitled to a presumption of truth. *Chaparro*, 693 F.3d at 1337.  More importantly, the Court need not take the allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.  Accordingly, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted.  Therefore, USYTA's motion to dismiss is granted as to Counts XIII and XIV of the SAC.

### IV.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

- Defendant Forest Trail's Motion to Dismiss the Second Amended Complaint [DE 100] is **GRANTED**.  Counts I, VII, VIII, IX, X, XI, XIII, and XIV of Plaintiffs' Second Amended Complaint [DE 99] are dismissed as to Forest Trail.

- Defendant USYTA's Motion to Dismiss Plaintiff's Second Amended Complaint [DE 101] is **GRANTED in part and DENIED in part**.  Counts VII, IX, XI, XII, and XIV of Plaintiffs' Second Amended Complaint [DE 99] are dismissed as to USYTA; Counts III, VI, VII and X remain.  **USYTA shall file an answer to the SAC by no later than September 1, 2025**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 22nd day of August, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE